IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**JAMES MATTHEW HARRIS**                                                          **PLAINTIFF**

**V.**                                              **CIVIL ACTION NO. 3:11cv26-MTP**

**CHRISTOPHER EPPS, et al.**                                                    **DEFENDANTS**

## OPINION AND ORDER

THIS MATTER is before the court on the Defendants' Motions for Summary Judgment [47][58]. The court, having considered the submissions of the parties and the applicable law, finds that the Defendants' Motions [47][58] should be GRANTED, and that this action should be dismissed with prejudice.

FACTUAL BACKGROUND

Plaintiff, James Matthew Harris, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983 on January 18, 2011. Plaintiff's claims occurred while he was a post-conviction inmate at South Mississippi Correctional Institution ("SMCI") and the Central Mississippi Correctional Facility ("CMCF"). Plaintiff is currently incarcerated at CMCF, Special Needs division. Through his complaint and as clarified during his *Spears*[1] hearing, Plaintiff alleges that Defendants denied him adequate medical treatment in violation of the Eighth Amendment. Specifically, Plaintiff complains that he was improperly treated and denied physical therapy for a back injury and received insufficient treatment for Hepatitis C. Plaintiff brings claims against Defendants Christopher Epps and Gloria Perry because of their alleged roles

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing occurred on August 18, 2011. *See* Omnibus Transcript, Ex. D to Motion [47-4] (hereinafter cited as "Tr.").

as policymakers for the Mississippi Department of Corrections' ("MDOC") Administrative Remedy Program ("ARP") and medical policy, respectively. Plaintiff brings a claim against Drs. Ronald Woodall and Robert Moore, medical directors at SMCI and CMCF, respectively, and Dr. Daisy Thomas, Ken Kaiser, nurse practitioner, and John Doe,[2] Plaintiff's treating physicians at CMCF. Plaintiff also brings a claim against Wexford Health Sources, Inc. for employing Mr. Kaiser, Dr. Moore, Dr. Thomas, Dr. Woodall, and, presumably, John Doe. *See* Omnibus Order [36].

On December 15, 2011, Defendants Ken Kaiser, Robert Moore, Daisy Thomas, Wexford Health Sources, Inc., and Ronald Woodall filed their Motion for Summary Judgment [47]. Remaining Defendants, Christopher Epps and Gloria Perry, filed their Motion for Summary Judgment [58] on January 5, 2012. Plaintiff has filed responses opposing both motions.

## STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to the non-moving party, the movant demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the movant fails to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the

---

[2] John Doe is an unknown physician at CMCF. Plaintiff testified that he would determine John Doe's identity through discovery (Tr. 19), but never provided the court with his identity.

party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id.* at 708, 712.

## ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983. However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws of the United States." *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability."). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304.

**Denial of Adequate Medical Care**

Plaintiff alleges that he was denied adequate medical care in violation of the Eighth Amendment. Plaintiff claims that he entered SMCI with a preexisting back injury and had previously undergone multiple back surgeries. (Tr. 51). In 2008, after arriving at SMCI, he claims that he received a CT scan which revealed "bulging discs, degenerative discs, and severe arthritis." (Tr. 52). Plaintiff alleges that Dr. Woodall prescribed him pain medication and then arbitrarily stopped the prescription. *Id.* Plaintiff testified that he complained about his treatment and was transferred to CMCF where "similar and worse behavior has been ongoing since." (Tr. 52). Plaintiff also states a claim against Mr. Kaiser for allegedly cancelling a prescription ordered for Plaintiff by a different physician. (Tr. 53). Additionally, Plaintiff alleges that in 2010, an off-site neurosurgeon ordered Plaintiff to receive physical therapy for his back, but Dr. Thomas continues to refuse to provide the recommended physical therapy. *Id.*

Plaintiff further alleges that he has Hepatitis C, a "contagious and deadly" disease, but is being denied treatment because Defendants say treatment is too expensive.[3] *Id.* at 52.

Plaintiff claims that Dr. Robert Moore, Medical Director at CMCF, was deliberately indifferent to his medical needs by ignoring Plaintiff's attempts to meet with him and cancelling scheduled appointments on four separate occasions. *Id.* Similarly, Plaintiff claims that Dr. Gloria Perry, Chief Medical Officer of the MDOC Office of Medical Compliance, displayed the same indifference by ignoring five separate written requests by Plaintiff for medical relief. *Id.* Plaintiff

---

[3]Harris does not specify which defendants have told him that Hepatitis C treatment would be too expensive. Tr. 52. "Finally, I also have Hepatitis C which is contagious and deadly yet despite numerous pleas for treatment, the Defendants continuously deny me claiming it's not approved because it's too expensive." *Id.*

4

alleges that Christopher Epps, too, demonstrated deliberate indifference to Plaintiff's medical needs by failing to respond to Plaintiff's request for relief through the ARP.

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 F. App'x 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838. "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). A supervisory prison official may only be held liable for the actions of a subordinate if he "'affirmatively participate[s] in acts that cause constitutional deprivation' or 'implement[s] unconstitutional policies that causally result in plaintiff's injury.'" *Johnson v. Scott*, 31 F. App'x 836, 2002 WL 243359, at *1 (5th Cir. Jan. 23, 2002) (quoting *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996)).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). A prisoner is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. CIVA 403CV141WHBJCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

In her affidavit, Dr. Perry stated that her office sent Harris to a radiologist for a magnetic resonance image ("MRI") and the radiologist reported that there was "no evidence of recurrent disc protrusion at any level." [47-1] at 3. Despite the MRI findings, Dr. Perry also stated that her office sent Harris for an evaluation with a neurosurgeon. *Id.* Plaintiff admits that he was sent to see an off-site neurosurgeon where he received an additional examination. (Tr. 53). Perry also stated that the neurosurgeon reported that "he did not find any true new deficits" and that he "didn't think Harris is going to need anymore conventional surgery." [47-1] at 3. The neurosurgeon did recommend Harris be placed on Neurontin, the medicine that Harris testified that he was receiving at the time of his *Spears* hearing. (Tr. 15).

Plaintiff has failed to establish a constitutional claim against Mr. Kaiser, Dr. Thomas, and Dr. Woodall because he has failed to prove that the medical personnel demonstrated a "wanton disregard for any serious medical needs." *Davidson*, 91 F. App'x at 965 (quoting *Domino*, 239 F.3d at 756). Plaintiff is receiving Neurontin and arthritis pain medicine and has received a CT scan, numerous X-rays, and an MRI. Plaintiff's extensive medical treatment record belies Plaintiff's claim that these physicians did not treat him or care about his condition. *Warren v.*

6

*Epps*, 2:10CV22-MTP, 2011 WL 3349829 (S.D. Miss. Aug. 2, 2011).

Plaintiff claims Dr. Thomas is refusing to provide the flex/extend lumbar spine physical therapy ordered by the off-site neurosurgeon. (Tr. 3); Response [62] at 3.  A "Return From Off-Site Follow Up" form completed by the Mississippi State Penitentiary recognized that the neurosurgeon recommended the patient be given Neurontin, flex/extend lumbar spine physical therapy, and receive an MRI in four months.[4] Ex. "D" [55-1] at 4.  Assuming this is true, Dr. Thomas's actions do not constitute deliberate indifference because a "doctor's failure to follow the advice of another doctor suggests nothing more than a difference in medical opinion." *See Stewart v. Murphy,* 174 F.3d 530, 535 (5th Cir.1999)(Prison doctor did not follow local surgeon's recommendation that prisoner be transferred to another facility to receive physical therapy); *see also Clifford v. Doe*, 303 F. App'x 174, 175 (5th Cir. 2008); *Stafford v. Kelly*, No. 4:09CV133–WAP–JAD, 2011 WL 2633034, at *2 (N.D. Miss. June 3, 2011)("The fact that one doctor recommended a particular course of treatment and that the treatment was not provided is no evidence of deliberate indifference. It merely shows that there was a difference of opinions between doctors.").  Further, "the question whether additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." *Stewart,* 174 F.3d at

---

[4]The report completed by Dr. E. Thomas Cullom, III, the neurosurgeon, does not specifically mention that Plaintiff should receive physical therapy. [51] at 81.  In his letter, Dr. Cullom noted that is was hard for him to find "any true new decits." *Id.* He went on to say that he noticed post-op changes and thought it would be "reasonable to go ahead and get flexion and extension views." *Id.* He also stated that he didn't think the patient would need anymore conventional surgery but would probably have been in chronic pain management "in another setting." *Id.*  The mention of physical therapy comes from the "Return From Off-Site Follow Up" completed by the Mississippi State Penitentiary.  It lists "flex/extend lumbar spine physical therapy" as one of Dr. Cullom's recommendations and is signed by Daisy M. Thomas, M.D. Ex. "D" [55-1] at 4.

535 (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

In regards to his claims that he is receiving inadequate care for his Hepatitis C, Plaintiff fails to allege conduct sufficient to constitute deliberate indifference. Ron Woodall stated in his affidavit that Plaintiff's condition is being routinely monitored at the Chronic Care Clinic, but that Plaintiff's test results "do not meet the necessary federal guidelines for additional treatment." [47-2]. Woodall also stated that if monitoring showed changes to Plaintiff's condition, "additional treatment will be provided as necessary." *Id.*

Plaintiff is simply dissatisfied with the treatment provided. A prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001); *see also Davidson v. Texas Dep't of Criminal Justice, Institutional Div.*, 91 F. App'x 963, 964-65 (5th Cir. 2004) (affirming dismissal of plaintiff's claims, reasoning that the denial of interferon therapy for plaintiff's Hepatitis C did not amount to deliberate indifference to a serious medical need).

Plaintiff's medical records are included as part of the summary judgment evidence before the court. *See* Docket [51]. These records, consisting of hundreds of pages, document regular treatment of plaintiff by various doctors and healthcare professionals for the ailments and conditions at issue. The parties may reasonably disagree over whether the treatment has been the most effective possible or whether the providers have been as diligent and accommodating as they could be. However, these voluminous records clearly establish the plaintiff has not been treated with deliberate indifference.

Robert Moore and Gloria Perry may have been responsible for supervising Plaintiff's case or recommending him for outside treatment, but Plaintiff has failed to establish that Moore and

8

Perry were deliberately indifferent to a serious medical need by canceling appointments to meet with Plaintiff. There is no evidence in the record that Plaintiff was exposed to a "substantial risk of serious harm," and that Defendants Moore and Perry were aware of such risk and disregarded it. *See Farmer*, 511 U.S. at 838; *see also Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) (affirming summary judgment in favor of defendants on plaintiff's claim for deliberate indifference, since plaintiff's alleged muscle atrophy, stiffness, loss of range of motion, and depression did not pose a substantial risk of serious harm). Perry stated in her affidavit that she did not provide direct medical care of inmates. Ex. "A" [47-1] at 3. As medical director, Moore also had limited contact with Plaintiff. *See Stewart v. Murphy*, 174 F.3d 530, 536 (5th Cir. 1999) (dismissing plaintiff's claims against Parchman's medical director since he was not plaintiff's treating physician and had limited contact with him). Moore and Perry's alleged refusal to meet with Plaintiff does not prove that they were aware Plaintiff was exposed to a substantial risk of serious harm and ignored it. Plaintiff fails to allege conduct sufficient to constitute deliberate indifference.

Plaintiff has failed to establish a constitutional claim against Defendant Christopher Epps as he has failed to allege, much less establish, that Epps affirmatively participated in the alleged violation or implemented an unconstitutional policy that causally resulted in his injury. *See Johnson*, 2002 WL 243359, at *1; *see also Stewart*, 174 F.3d at 536; *Phillips v. Monroe County*, 143 F. Supp. 2d 663, 668 (N.D. Miss. 2001) (dismissing plaintiff's claims against Parchman's medical director since he had no contact with plaintiff).

Also, Plaintiff does not have a constitutional right to a grievance procedure, and has no due process liberty interest right to having his grievance resolved to his satisfaction. *See Geiger*

9

*v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005); *Jones v. Shabazz*, No. H-06-1119, 2007 WL 2873042, at *21 (E.D. Tex. Sept. 28, 2007). Accordingly, Plaintiff's allegations that Defendant Christopher Epps failed to grant him his requested relief through the ARP also fails to establish a constitutional violation.

**Failure to Train and Supervise**

Plaintiff appears to make a claim against Defendants Epps for failure to train staff in the medical department.[5] (Tr. 56-57). As previously mentioned, it is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver,* 276 F.3d at 742. Plaintiff cites *Baker v. Putnal* which says "supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury." 75 F.3d 190,199 (5th Cir. 1996) (quoting *Mouille v. City of Live Oak, Tex.,* 977 F.2d 924, 929 (5th Cir.1992)). In order for a supervisor to be liable for failure to train or supervise in a § 1983 claim, the plaintiff must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a casual link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris Cnty.,* 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Smith v. Brenoettsy,* 158 F. 3d 908, 911-12 (5th Cir. 1998)); *see also Porter,* 659 F.3d at 446. In order for a plaintiff to establish deliberate indifference, he or she must demonstrate "a pattern of violations and that the inadequacy of the

---

[5]Plaintiff also briefly mentions Perry in association with this claim. "I would allege Epps and Perry are [involved] through ARP and letter." Tr. 56-57. He goes on to say that "a jury could easily conclude that Epps has failed to maintain a competently trained staff in the medical department," but he makes no further mention of Perry. *Id.*

training is obvious and obviously likely to result in a constitutional violation." *Goodman,* 571 F.3d at 395.

Plaintiff alleges that Epps was responsible for creating MDOC policies which govern "the training of non-MDOC personnel; treatment programs; . . . and health care policies in general" and has failed to maintain a competently trained medical staff. (Tr. 56-57). Plaintiff suggests the court could subpoena medical ARPs filed in the last two years to prove that Epps was deliberately indifferent by failing to address inmates' complaints.

Prisoners do not have a constitutional right to a grievance procedure, and have no due process liberty interest right to having grievances resolved to their satisfaction. *See Geiger* 404 F.3d at 374-75. The evidence Plaintiff offers to support his failure to supervise claim does not establish that there actually was a failure to supervise, much less that the alleged failure constituted deliberate indifference. Thus, Plaintiff fails to establish a failure to supervise claim against Defendant Epps.

Also, Plaintiff alleges Wexford Health Sources, Inc., which supplies medical care to MDOC inmates by contract with the state, was deliberately indifferent by hiring Plaintiff's treating physicians and for failing to train and supervise its doctors. (Tr. at 59). There is no *respondeat superior* liability under Section 1983, and Plaintiff has failed to demonstrate that Wexford affirmatively participated in any constitutional deprivation or implemented an unconstitutional policy. *See Powell v. Shopco Laurel Co.,* 678 F.2d 504, 506 (4th Cir.1982) (holding that plaintiff could not recover against private state-employed company under Section 1983 based on theory of *respondeat superior* ). *Cf. Mouille v. City of Live Oak, Tex.,* 977 F.2d 924, 929 (5th Cir.1992) (discussing liability of municipality for actions of subordinate). A more fundamental reason

11

supports the conclusion that liability should not be imposed on Wexford: its employees did not commit a constitutional violation. *Warren v. Epps*, 2:10CV22-MTP, 2011 WL 3349829 (S.D. Miss. Aug. 2, 2011). Accordingly, Wexford is entitled to judgment as a matter of law on Plaintiff's claims for deliberate indifference to his medical needs by failure to train and supervise its employees.

**Qualified Immunity**

Although Defendants Christopher Epps and Gloria Perry have raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant is entitled to dismissal on that basis." *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1993) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee,* 195 F.3d 234, 236 (5th Cir. 1999). Because the court finds that the Plaintiff's claims against Epps and Perry fail as a matter of law or lack appropriate factual support, it declines to address the issue of whether these Defendants are entitled to qualified immunity. *Wells*, 45 F.3d at 93.

## CONCLUSION

For the reasons stated above, the court finds that Defendants' Motions for Summary Judgment [47][58] are GRANTED and that this action should be dismissed with prejudice. A separate judgment will be entered pursuant to Fed. R. Civ. P. 58.

SO ORDERED this the 31st day of July 2012.

            s/ Michael T. Parker
            United States Magistrate Judge